[No. 36029-9-I. Division One. May 20, 1996.]

HOWARD V. LEENDERTSEN, ET AL., *Respondents*, v. PRICE WATERHOUSE, *Appellant.*

---

[9]*See In re Marriage of Trichak*, 72 Wn. App. 21, 24, 863 P.2d 585 (1993).

*Theodore P. Senger, Assistant General Counsel, Price Waterhouse, L.L.P.*, and *Arthur C. Clafin*, and *Bogle & Gates, P.L.L.C.*, for appellant.

*Richard M. Stanislaw, Robert P. Majerus*, and *Stanislaw, Ashbaugh, Riper, Peters & Beal*, for respondents.

*Stephen M. Rummage* on behalf of Washington Society of Certified Public Accountants, amicus curiae.

COLEMAN, J. — We are asked to address whether the

trial court erred by permitting the Leendertsens to recover interest paid to the IRS as a result of an underpayment of taxes caused in part by Price Waterhouse's negligence. PW argues that because the Leendertsens had the value of the use of the money, recovering interest paid to the IRS is inappropriate. We agree and reverse.

Clark, Nuber & Company, a prior defendant in this case, prepared plaintiffs Howard and Elizabeth Leendertsens' tax returns for 1986 and 1987. These returns miscalculated the Leendertsens' net operating loss carrybacks, resulting in excessive tax refunds. Unaware of these mistakes, the Leendertsens hired PW the next year to prepare their 1988 tax returns. PW failed to detect the prior error and obtained an erroneously excessive refund for the Leendertsens in 1989. From 1987 to 1989, the Leendertsens received approximately $400,000 in excessive tax refunds. In 1991, the IRS discovered the mistakes in the tax returns, and in 1994, the Leendertsens paid the IRS $634,608.45.

The Leendertsens sued Clark, Nuber & Company and PW, claiming negligence and promissory estoppel. The Leendertsens contended the "[d]efendants negligently promised" that the tax refunds could be used in their new business, Hilton Oil. From 1987 to 1990, the Leendertsens invested close to $1 million in the business. In an interrogatory answer, the Leendertsens stated, "Upon receipt of these funds, plaintiffs could do what they wanted with the money. Plaintiffs elected to use the money to fund the growth of Hilton Oil." The Leendertsens also stated, "Plaintiffs justifiably relied on these promises to their detriment by investing refund money in Hilton Oil. Now the plaintiffs will likely have to sell Hilton Oil in order to pay off the tax deficiencies." PW moved for summary judgment. The court granted summary judgment on the promissory estoppel claim and denied summary judgment on the negligence claim.

PW moved to exclude any evidence contradicting the

Leendertsens statements in their complaint and interrogatory responses that the proceeds of their IRS refunds were invested in Hilton Oil. The Leendertsens also brought a motion in limine to exclude any evidence of how they invested their tax refunds. The court denied both motions.

At trial, Howard Leendertsen stated that the excess refund money was used to pay off a line of credit at Seafirst Bank. Leendertsen stated that he was mistaken when he earlier stated that the money went into Hilton Oil because he did not then have the benefit of bank records. PW introduced the Leendertsens' complaints and the portions of their interrogatory responses indicating that the money was invested in Hilton Oil and further presented evidence that the Leendertsens received a substantial return from their investment.

The court instructed the jury that, if it found for the Leendertsens, the jury should consider costs of litigation with the IRS and the interest owed or paid by the Leendertsens because of the excess tax refunds. The court then stated, "In deciding whether these elements actually constituted damage to plaintiffs, you should consider the reasonable value, if any, of the use of the money to the plaintiffs." The verdict form requested damages generally, without specifying the portion for interest paid or owed, and the portion for attorney's fees.

The jury awarded damages of $235,518, assigning 89 percent of the blame to PW, resulting in a principal judgment amount against PW of $209,611.02. PW does not contest on appeal the $31,611.02 attributable to PW's share of legal costs that the Leendertsens incurred in suing the IRS.

PW filed a postjudgment motion for judgment as a matter of law or a new trial, claiming that the Leendertsens received a windfall by recovering interest on moneys used. The motion was denied and PW appealed.

We are asked to address whether the court erred by failing to rule that the Leendertsens cannot recover interest

paid to the IRS as a result of an underpayment of taxes. PW claims that, as a matter of law, such interest is not damages but rather reflects the value of the use of money that should have been paid as taxes. The Leendertsens claim that the collateral source rule provides that any income resulting from the use of the money is irrelevant.

Washington courts have not addressed this question. Several courts from other jurisdictions, however, have held that such interest is not recoverable. In *Freschi v. Grand Coal Venture*, 767 F.2d 1041 (2d Cir. 1985), *vacated on other grounds*, 478 U.S. 1015 (1986), plaintiff brought action against defendants for violating federal securities laws by marketing fraudulent tax shelters. The court held that interest and penalties paid to the IRS were not recoverable consequential damages because such moneys constituted a return by the plaintiff to the IRS "of what would otherwise be a windfall resulting from his opportunity to use money to which he was not entitled." *Freschi*, 767 F.2d at 1051; *see also Stone v. Kirk,* 8 F.3d 1079 (6th Cir. 1993) (plaintiffs not entitled to recover interest paid on back taxes because plaintiffs had the use of the tax money). Similarly, when clients sued their investment advisor for negligent misrepresentation, the Alaska Supreme Court held that the clients could not recover interest paid because the clients "had the use of these monies and, presumably, were able to earn interest while they held it." *Orsini v. Bratten*, 713 P.2d 791, 794 (Ala. 1986); *accord Gudschinsky v. Hartill*, 815 P.2d 851 (Alaska 1991). Likewise, in *Alpert v. Shea Gould Climenko & Casey*, 160 A.D.2d 67 (N.Y. 1990), investors in a tax shelter brought a fraud action against law firms that prepared erroneous tax opinion letters. Citing *Freschi*, the court precluded recovery of interest, reasoning that "the equities militate in favor of barring recovery of such interest rather than allowing plaintiffs the windfall of both having used the tax moneys for seven years and recovering all interest thereon." *Alpert*, 160 A.D.2d at 72.

The Leendertsens rely principally on an Oklahoma case

which held that the plaintiffs could recover interest owed to the IRS from the estate of a deceased accountant who erroneously calculated their tax refund. *Wynn v. Holmes*, 815 P.2d 1231, 1235 (Okla. Ct. App. 1991). The court reasoned that, under the collateral source rule, a payment to the plaintiffs from a wholly independent source of the wrongdoer cannot inure to the benefit of the wrongdoer by lessening the damages recoverable from the wrongdoer. *Wynn*, 815 P.2d at 1235. The Leendertsens argue that this court should follow *Wynn* and affirm its award of interest.

■ The collateral source rule provides that a tortfeasor's liability cannot be offset by an independent source compensating the plaintiff for the same injury. *Wheeler v. Catholic Archdiocese*, 124 Wn.2d 634, 640, 880 P.2d 29 (1994); *Bowman v. Whitelock*, 43 Wn. App. 353, 357, 717 P.2d 303 (1986); *see also Ciminski v. SCI Corp.*, 90 Wn.2d 802, 804–05, 585 P.2d 1182 (1978) (medicare payments were a collateral source of payment for injury). In *Bowman*, the court held that testimony that plaintiff received a bonus for agreeing to retire early was not excludable collateral source evidence because the plaintiff received the compensation for agreeing to retire early, not for her alleged injury. *Bowman*, 43 Wn. App. at 357–58. The collateral source rule is not applicable here because the Leendertsens did not receive profits from the excessive refund to compensate them for injuries PW caused.

■ We follow the majority of jurisdictions holding that interest paid to the IRS is not recoverable. *See Stone*, 8 F.3d at 1093; *Freschi*, 767 F.2d at 1051; *Gudschinsky*, 815 P.2d at 856; *Orsini*, 713 P.2d at 794. Two elements of negligence are not met in this case: legal causation and damages. First, the Leendertsens' independent business judgment as to where to invest the money breaks the legal causation element. *See, e.g., King v. Seattle*, 84 Wn.2d 239, 250–51, 525 P.2d 228 (1974) (no proximate cause because plaintiffs exercised voluntary business judgment); *accord Grader v. City of Lynnwood*, 53 Wn. App. 431, 442, 767 P.2d 952, *review denied*, 113 Wn.2d 1001 (1989). Legal

causation is largely a policy question as to how far the consequences of a defendant's acts should extend. *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985). Here, the speculative nature of causation, coupled with the difficulty of proving where money was invested, weigh against a finding of proximate cause. The facts of this case illustrate this point, as the parties disagreed about how the Leendertsens used the tax refund money. Second, damages from poor investing are too speculative to blame upon defendants. The Leendertsens had the value of the use of the money during that time and would be unjustly enriched to recover that interest from another source.[1] Accordingly, we hold that interest owed to the IRS as a result of an underpayment of taxes is not recoverable from the defendants.

GROSSE and BECKER, JJ., concur.

Review denied at 130 Wn.2d 1009 (1996).

---

[1]PW also claims that the Leendertsens' pretrial statements as to the use of their excess tax refunds should have been treated as judicial admissions and that the court should have granted their motion for judgment as a matter of law or a new trial. Because we hold that interest paid to the IRS is not recoverable, these issues are irrelevant. In addition, the Leendertsens claim that PW has waived its right to appeal by failing to request a special verdict form. PW concedes owing Leendertsens $31,611.02, 89 percent of the $35,518 that Leendertsens requested in attorney fees. The lack of segregation for the interest award is irrelevant, as none of it is recoverable.